**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ORLAND PAYNE, | ) CASE NO:  6:12-cv-06136-MAT |
| | ) |
| Plaintiff | ) District Judge Michael A. Telesca |
| | ) |
| v. | ) Magistrate Jonathan W. Feldman |
| | ) |
| ALLIED INTERSTATE, INC., | ) MEMORANDUM OF LAW IN SUPPORT |
| | ) OF PLAINTIFF'S MOTION FOR |
| Defendant | ) ATTORNEYS' FEES AND COSTS |

Pursuant to the terms of Defendant Allied Interstate, Inc.'s Offer of Judgment, Plaintiff,

Orland Payne, submits this Memorandum of Law in support of her Motion for an Award of

Attorney's Fees and Costs in the amount of $5,895.50, as provided under 15 U.S.C.

§1692k(a)(3).

I.   **BACKGROUND**

A.   **FACTUAL AND PROCEDURAL HISTORY OF CASE**

Throughout January 2012 Defendant made repeated harassing telephone calls to Plaintiff

*See* Docket Entry 1.  Defendant often called Plaintiff multiple times per day, sometimes calling

Plaintiff three times in a single day.  *See Id.* Plaintiff repeatedly advised Defendant that he did

not owe the debt and requested information concerning the debt, which Defendant never

provided. *See Id.* Plaintiff also demanded that Defendant stop calling him, but Defendant

persisted in its collection efforts despite this request, continuing to call Plaintiff. *See Id.*

As a result, frustrated and upset by Defendant's repeated efforts to collect this alleged

debt, Plaintiff sought legal representation in or around January 2012.   After conducting an initial

assessment on January 10, 2012 and a subsequent more in depth assessment on the same date,

Plaintiff's counsel determined it was able to assist Plaintiff. *See* Exhibit "A".  A letter was sent to

Defendant's representatives via electronic mail on January 10, 2012 advising Defendant to cease

all communications with Plaintiff and to direct all future correspondence to Plaintiff's counsel. *See Id.* The correspondence forwarding this letter also provided Defendant with detailed synopsis of Plaintiff's claims in hopes of an early resolution. *See Id.*

Plaintiff provided Defendant with a demand on February 14, 2012 in response to an initial offer from Defendant. However, Defendant never responded, prompting Plaintiff to file the present lawsuit on March 16, 2012 alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.  See* Docket Entry 1. The Complaint was fact specific, setting forth information about the efforts made by Defendant to collect this alleged debt, and indicated three seven provisions of the FDCPA that were violated by the Defendant. Specifically, Plaintiff asserted that Defendant violated sections 1692d, 1692d(5), 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1) of the FDCPA. *See Id.*

Thereafter, the parties actively engaged in the litigation of this matter. *See* Exhibit "A". The specific actions taken by counsel in litigating this matter are detailed in Exhibit "A", and include preparation of a Rule 26 Report, review of Defendant's corporate disclosure and answer, attendance at a Rule 16 conference, and conferral regarding mediation of this matter. *See Id.*

Plaintiff received Defendant's initial Offer of Judgment for $750.00 on or about September 20, 2012. This offer was rejected by Plaintiff as insufficient. Plaintiff then received Defendant's second offer of judgment, which provided him with greater relief on September 25, 2012. This second offer of judgment was the result of Plaintiff's counsel's negotiating a higher figure for him. He then filed his acceptance on September 26, 2012. *See* Docket Entry 18-1. Defendant's August 31, 2012 Offer of Judgment provides in relevant part:

> 1. Defendant will allow judgment to be entered against it in the amount of One Thousand Dollars ($1,000.00), plus reasonable costs and attorneys' fees incurred by Plaintiff up to the date of this Offer of Judgment only, in an amount mutually agreed upon by the parties, or as determined by the Court if the parties cannot reach agreement.

*See Id*. This is an excellent result for Plaintiff as it totals his full statutory damage amount he would have been entitled to if this matter had proceeded to trial.  The Offer also provides for Plaintiff to be paid reasonable attorney's fees and costs through the date of the Offer. As the parties were unable to resolve the issue of attorney's fees and costs, this issue remains outstanding.   Hence, Plaintiff now files the present motion for his fees and costs.

### B.  <u>FEES SOUGHT BY PLAINTIFF</u>

In the present Motion, Plaintiff seeks compensation for his reasonable fees and costs as provided for in Defendant's Rule 68 Offer of Judgment and 15 U.S.C. 1692k.   Time was expended by four attorneys, including partner, Craig Thor Kimmel, Senior Associates, Amy L. Bennecoff and Tara L. Paterson, Associate, and associates Christopher J. Kelleher and Jacob U. Ginsburg.  Further, time was expended by paralegals Jason Ryan and Pete Keltz, and law clerk Caroline Diehl.  Additional time was expended by attorney Angela Troccoli but was removed from the final bill.  The total amount billed by attorneys and paralegal staff at Kimmel & Silverman, P.C. totaled $5,470.50. *See* Exhibit "A". In addition, costs were expended for the filing of the complaint and for a pro hac vice motion totaling $425.00. *See Id.* Overall, Plaintiff seeks compensation in the amount of $5,895.50. *See Id.*

The reduced hourly rate for the services provided by partner Craig Thor Kimmel is $225.00 for the 10.7 hours of his billable time. Mr. Kimmel was admitted to practice law first in Pennsylvania in 1989 and admitted to New York in 1997.  He has been admitted to a number of other Courts as reflected in the attached exhibits in support and is well known within the legal communities he practices in for having substantial success over more than 22 years in representing consumers. With regard to this case, Mr. Kimmel's time was expended as with every Allied Interstate claim, beginning at the outset of the case and through completion. Mindful of concerns to be efficient and in an effort to keep fees and costs reasonably low, Mr. Kimmel properly employed associates and staff within his practice to assist, choices which result

in a lower bill of fees and costs presented for payment, saving Defendant money. In total for his time then, the reasonable attorney fees for services provided by Mr. Kimmel are $2,407.50.   A true and correct copy of his contemporaneous time entries is integrated in the undersigned's invoice for services rendered, attached hereto as Exhibit "A".

Following Mr. Kimmel, the services of his senior attorneys Amy L. Bennecoff and Tara L. Patterson were necessitated, at their reduced hourly rate of $200.00, for 9.7 hours of reasonable billable time they expended.    Ms. Bennecoff expended time conferring with Defendant's counsel, preparing pleadings and court correspondence, and strategizing with colleagues for the successful litigation of this matter.  Ms. Patterson expended time preparing discovery in this matter.  The reasonable attorney fee for the services provided by Ms. Bennecoff and Ms. Patterson is $1,946.00.  *See* Exhibit "A".

Next, the legal services of associate Christopher J. Kelleher were rendered at the reduced rate of $200.00 for a total of 0.3 hours of reasonably expended billable time.  Mr. Kelleher's time was reasonably spent conferring with colleagues regarding mediation in this matter. The reasonable fee for services provided by Mr. Kelleher is $60.00.

Finally, the legal services of attorney Jacob U. Ginsburg were rendered at the reduced rate of $180.00 for a total of 2.2 hours of reasonably expended billable time.  Mr. Ginsburg's time was reasonably spent drafting the initial complaint in this matter and communicating with Plaintiff. As the attorney with the lowest hourly rate of the three attorneys involved in the prosecution of this case, his time also resulted in a net savings to Defendant in terms of the ultimate bill, which would have been much greater if Ms. Bennecoff, Ms. Patterson, Mr. Kelleher, or Mr. Kimmel had undertaken the very same tasks.  His participation was reasonable and necessary to ensure an efficient litigation plan for the client and to keep fees to a minimum. The reasonable fee for services provided by Mr. Ginsburg is $396.00.  *See* Exhibit "A".

The reduced hourly rate for non-lawyer personnel at the firm includes services provided paralegal Jason Ryan (1.7 hours) at an hourly rate of $80.00; and paralegal Pete Keltz (4.7 hours) at an hourly rate of $50.00.  Law Clerk Caroline Diehl also spent 2.9 hours at the reduced rate of $100.00 per hour.  Each expended their efforts for routine tasks[1] which vary little at this stage of the litigation and upon the complexity of the case.  Non-attorney time expended totals 9.3 hours, for a total combined amount for their services of $661.00.  *See* Exhibit "A".

Total court costs expended on the case total $350.00 for filing the complaint and $75.00 for a pro hac vice motion, both fees charged by the clerk of court.  *See* Exhibit "A".   Costs relating to copy charges, postage and telephone were expended on the file total more than $100, but are not being submitted for reimbursement in this case.

In sum, the total reasonable attorney fees and costs requested is $5,895.50.  *See Id.*

## II.   ARGUMENT

### A.   THE PLAIN LANGUAGE OF THE FDCPA MANDATES THAT PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND COSTS.

The Offer of Judgment specifically provides for Plaintiff to receive fees and costs in connection with the prosecution of this matter. *See* Docket Entry 18-1.  In addition, 15 U.S.C. §1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person in an amount equal to the sum of— * * * (3) in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee as determined by the court**.

15 U.S.C. §1692k(a) (emphasis added). "Given the structure of [15 U.S.C. §1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Walkeron*, 950 F. 2d 107, 113 (3d.

---

[1] The Court should note that while these tasks may be routine, the tasks billed are not administrative in nature.  All entries for administrative tasks performed by paralegal staff have been omitted from the Plaintiff's counsel's invoice, attached hereto as Exhibit "A".

Cir. 1991); *Miller v. Midpoint Resolution Group, LLC,* 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61, (E.D. N.Y. 1994) (noting that the structure of the fee shifting provision included in the FDCPA mandates attorney's fees as the means of fulfilling congressional intent that the act be enforced by private attorneys general).

Thus, the FDCPA mandates that the recovery of attorney's fees and costs in connection with successful prosecution of an action under the FDCPA is integral to the success of the policy goals underlying the FDCPA.  By virtue of the Offer of Judgment, Defendant has stipulated to submission of the attorney's fees and costs to the Court, if the parties could not resolve the matter by agreement.

### B. **PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS TO PLAINTIFF.**

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.  *See* 15 U.S.C. 1692.  The fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefiting society in general, resulting in greater deterrence of fraudulent and deceptive business practices. *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996); *Foti v. Commonwealth Fin. Systems, Inc.*, 424 F. Supp. 2d 643, 653 (S.D. N.Y. 2006).  "[T]he purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997).  By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.  Lacking a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would not make the

consumer whole, as the average consumer would be unable to pay his attorney's fees, creating a deterrent for private attorneys to pursue this type of action.   Fee shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs.  *Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994).

## C.  AN AWARD OF ATTORNEYS' FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive.  Awarding fees based upon actual time expended, rather than amount of recovery, makes economically feasible the pursuit of remedies by consumers in state and federal courts.[2] The U.S. Supreme Court has explained the calculation for an award of attorneys' fees:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *see also Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458, 2009 U.S. Dist. LEXIS 71562, *3-4 (S.D.N.Y. Aug 13, 2009).

In determining what a "reasonable fee" is the Second Circuit has held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2007). Specifically, in *Arbor Hill*, the Second Circuit found that the familiar "lodestar" formula "has deteriorated to the point of unhelpfulness," and held that district courts should abandon the lodestar concept entirely

---

[2] Analogous federal consumer protection statutes have likewise been interpreted in such manner.  *See* S.Rep. 93-151 at 24 (stating "[i]t should be noted that an attorneys' fee is to be based on actual time expended rather than being tied to any percentage of the recovery").  Courts analyzing the fee shifting provision included in the federal Magnuson-Moss Warranty Act have noted: "In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended." *Jordan v Transnational Motors, Inc.*, 537 N.W.2d 471 (Mich. 1995).

and focus fee determinations on the "presumptively reasonable fee," which amounts to "what a reasonable, paying client would be willing to pay." *Id*. at 190.

In making this determination, the Second Circuit held that it was incumbent upon the district court to "step[] into the shoes of the reasonable, paying client," and "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate." *Id*. at 184, 190 (emphasis in original). Among those factors cited by the Second Circuit that should be considered in calculating the appropriate attorneys' fee award are:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Arbor Hill,* 522 F.3d at 184.

The Second Circuit further identified the frequently cited "Johnson factors" as relevant. *Id.* at 117-18 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds, by *Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 109 S. Ct. 939, 944(1989)). These include the following 12 case-specific factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187, n.3 (citing *Johnson*, 488 F.2d at 717-19). The Second Circuit made clear, however, that the list of factors specifically identified in *Arbor Hill* is not exclusive, and that all of the case-specific variables for fee determination previously identified in the relevant

jurisprudence may be considered in ascertaining what rate a reasonable paying client would pay. *Id*. at 189. Applying the *Arbor Hill* standard in this case, the Court should grant the attorneys' fees requested by Plaintiff's Counsel.

### 1.    The time and labor required.

The Eastern District of Wisconsin has stated, "[W]hen it comes time for the court to award the fees, it must not penalize [Plaintiff]'s attorneys for responding to [Defendant]'s defense. . . . Law is labor intensive; lawyers are paid for the diligence and the intelligence, commodities that cannot be mass produced on an assembly line." *Diettrich v. Northwest Airlines*, 967 F.Supp. 1132 (E.D.Wis. 1997) *rev'd on other grounds* 168 F.3d 961 (7th Cir. 1999). The "primary concern in evaluating a request for attorney fees is that the fee awarded be reasonable." *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 433 (6th Cir. 2002) (internal quotes omitted).

At the outset of Kimmel & Silverman's representation of Plaintiff, his counsel notified Defendant via letter that he was handling this matter on January 10, 2012. *See* Exhibit "A". Plaintiff also provided Defendant with a detailed synopsis of the case at that time in hopes of resolving this matter early. *See Id.* While Defendant made an offer approximately one month later, it was minimal and barely covered one hour of time expended on the file. Plaintiff then made a demand in response, but Defendant never responded. *See Id.* As a result, Plaintiff had no option but to proceed into litigation.

Plaintiff's counsel then prepared a Complaint in this matter, which was later filed on March 16, 2012. *See* Docket Entry 1. Even after this lawsuit was filed, Plaintiff's counsel received no response to Plaintiff's demand. As a result, counsel was forced to litigate this matter. Plaintiff's counsel refers the Court to Exhibit "A" which provides a detailed itemization of the tasks performed by counsel. However, by way of example, counsel was compelled to review pleadings filed in this matter, draft and file pleadings and correspondence, participate in a conference with the Court, prepare discovery requests and responses, and prepare documents

9

relative to mediation in this matter - all as a result of Defendant's failure to resolve this matter early and continuing to litigate this case.  *See Id.*

Defendant did not make an effort to resolve this matter after receiving Plaintiff's demand in February 2012, until Plaintiff's counsel received the first Offer of Judgment on September 20, 2012.  However, this first Offer of Judgment was insufficient and was rejected by Plaintiff.  Due to the successful negotiations by Plaintiff's counsel a second Offer of Judgment was then issued on September 25, 2012, which provided Plaintiff with his <u>full</u> statutory damage amount under the FDCPA.  *See* Docket Entry 18-1.  Plaintiff promptly accepted this second Offer of Judgment on the following date.  *See* Docket Entry 18.

The tasks performed on this matter were certainly both reasonable and necessary as Defendant showed no interest in resolving this matter early on, making only a minimal offer, and only made its Offer of Judgment once significant work had been done on the file.  However, due to counsel's extensive experience handling FDCPA matters, the time performing such tasks on this file was minimal.  A review of Plaintiff's counsel's billing records reveals that counsel utilized wherever possible documents used in prior matters, saving time and expense that would otherwise have been billed to Defendant.  Further, even tasks that required greater analysis and preparation time were also billed minimally. For example, Plaintiff's counsel spent just over two hours discussing the facts of the case with Plaintiff, reviewing documents, and drafting the complaint in this matter.  *See* Exhibit "A".

It is clear that Plaintiff's counsel made efforts early on to contact Defendant by sending out initial correspondence to Defendant on January 10, 2012.  *See* Exhibit "A".  Plaintiff's counsel also utilized its knowledge and experience in the area of FDCPA litigation to keep time billed for necessary litigation tasks to a minimum.  Hence, Plaintiff's counsel made efforts at all times to keep the time spent on this matter and the fees billed to this matter low and reasonable, and Plaintiff's counsel should not be penalized for having to litigate this matter.

**2.      The skill required to perform the legal services properly, and the experience, reputation and ability of the attorneys.**

Kimmel & Silverman, P.C. has been regularly recognized for its expertise in the area of consumer litigation.  More than sixteen years ago the United States District Court for the Eastern District of Pennsylvania recognized that Mr. Kimmel and his firm possess a notable level of experience in the area of consumer protection litigation. *See e.g. Stitsworth v. Ford Motor Company*, 1996 WL 67610 (E.D. Pa. 1996); *see also Posner v. Mitsubishi*, U.S.D.C., E.D. Pa. 95-CV-6099.   More recently the United States District Court for the Eastern District of Pennsylvania noted counsel's "abundance of experience in the consumer law field." *See Brass v. NCO Financial Systems, Inc.*, 2011 WL 3862145 (E.D. Pa. July 22, 2011; Report and Recommendation adopted on August 31, 2011); *see also Alexander v. NCO Financial Systems, Inc.*, 2011 WL 2415156 (E.D. Pa. June 16, 2011) (recognizing Plaintiff's counsel's "high level of experience" and "reputation" in the field of consumer litigation"); and *Williams v. NCO Financial Systems, Inc.*, 2011 WL 1791099 (E.D. Pa. May 11, 2011) (same).   Mr. Kimmel and his firm have only added to their achievements in the time since these opinions were written.

The Certifications of Craig Thor Kimmel, Amy L. Bennecoff, Tara L. Patterson Christopher J. Kelleher and Jacob U. Ginsburg show that each is accomplished in the field of consumer litigation, and with a combined forty years litigation experience. *See* Exhibits "B" - "F".  Each has handled countless FDPCA cases, as well as, other consumer related matters.  Both Mr. Kimmel and Ms. Bennecoff have also been relied upon as a source for news publications and television programs due to their expertise in this area.  It is their extensive knowledge in this area that led Plaintiff to retain Mr. Kimmel and his firm to handle this matter on his behalf.

**3.      The customary fee for like work in the community.**

The hourly rate for each advocate is to be based on the **prevailing rate in the community for that individual's level of legal skill and experience**. *Blum v. Stenson*, 465 U.S. 886 (1984); *see also Cruz v. Local Union No. 3*, 34 F.3d at 1159 (2d Cir. 1994) (emphasis

added). "In communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Blum v. Stenson*, 465 U.S. 886 (1984). The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993),

> "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino v. Friedman*, 46 F. 3d 645, 652 (7th Cir. 1995).   The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group,* 842 F.2d 1436, 1449 (3d Cir. 1988).

The U.S. Supreme Court has stated: "The statute and legislative history establish that 'reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum,* 465 U.S. at 895 (footnote omitted).

Plaintiff's attorneys' fee request is within the prevailing market range in this type of representation.   Affidavits of the plaintiff's attorney, along with rate determinations in other cases are satisfactory evidence of the prevailing market rate.   *United Steelworkers of America v. Philips Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).   Here, Plaintiff submits the Declarations of his counsel, Mr. Kimmel, Ms. Bennecoff, Ms. Patterson, Mr. Ginsburg and Mr. Kelleher who attest to the reasonableness of the fees sought by their firm in this matter.   *See* Exhibits "B"- "F". Further, Plaintiff cites to a litany of case law herein that supports the fee request.

The hourly rates that Plaintiff seeks to recover are reasonably comparable with those charged by lawyers of like skill, experience and/or reputation practicing in the Western District of New York. *See e.g.*, *White v. Bronson & Migliaccio, LLP*, 09-cv-00402 (W.D.N.Y. Oct. 4, 2010) (approving rates of $225.00 per hour for attorney with 3 years experience; $254.00 per hour for attorney with 6 years experience; and $394.00 per hour to attorney with 16 years experience); *Flegal v. First Source Advantage, LLC*, 10-00771 (W.D.N.Y. May 9, 2011) (awarding $215 per hour to partner, $180.00 per hour to associate, and $50 per hour to paralegal); *Fajer v. Kaufman, Burns & Assocs.*, 09-cv-716, 20ll WL 334311 (W.D.N.Y. Jan 28, 2011) (awarding $215 per hour to partner, $175.00 per hour to associate, and $75.00 per hour to paralegal); *Hoover v. W.N.Y. Capital*, 09-cv-955, 2010 WL 2462500 (W.D.N.Y. June 16, 2010) ($180.00 per hour for attorney and $50.00 per hour for paralegal); *Dayton v. Ne. Fin. Solutions*, 09-cv-549, 2009 WL 45671819 (W.D.N.Y. Dec. 7, 2009) (awarding attorney rates of $180.00 - $215.00 per hour and paralegal rate of $50.00 per hour); *Clark v. Brewers Michaels & Kane, LLC*, 09-cv-188, 2009 WL 3303716 (W.D. N.Y. Oct. 14, 2009) awarding attorney rates of $180.00 - $215.00 per hour and paralegal rate of $50.00 per hour); *Cornett v. Capital Mgnt. Servs., Inc.*, 05-cv-515A (W.D.N.Y. Aug. 8, 2006) (awarding $200.00 per hour for attorney and $50.00 per hour for paralegal); *McCarty v. Capital Mgnt. Servs., Inc.*, 05-cv-505S (W.D.N.Y. Jul. 17, 2006) (awarding $200.00 per hour for attorney); *Zilgme v. NCB Mgnt. Serv. Inc.*, 05-cv-749S, (W.D.N.Y. May 16, 2006) (awarding $200.00 per hour for attorney and $50.00 per hour for paralegal time); *Bartosik v. Credit Bureau of Rochester, Inc.*, 05-cv-318S, (W.D.N.Y. Mar. 31, 2006) (awarding $200.00 per hour for attorney); *Morreale et al v. Forster & Garbus*, 07-cv-00787 (W.D.N.Y. May 19, 2008) (awarding $215.00 per hour to attorney and $175.00 per hour to attorney with two years experience); *Proctor v. PMR Law Group*, 09-CV-1028S, 2010 WL 4174723, at *5 (W.D.N.Y. Oct. 25, 2010) (awarding attorney rates of $175.00 - $215.00 per hour and paralegal $75.00 per hour); and *Taylor v. Morgan Stone & Assocs., LLC*, 09-CV-827, 2010

WL1816675 (W.D.N.Y. May 4, 2010) (approving attorney rates of $175.00 - $215.00 per hour and clerk/paralegal rate of $75.00 per hour).

### 4.    Whether the fee is fixed or contingent.

In a FDCPA case, such as the present one, the fee is contingent upon success of the case. In this private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. *Blum,* 465 U.S. at 903; *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986), *citing Hensley*, 461 U.S. at 448 ("[t]he risks of not prevailing or not recovering any fees appear to be bases or exceptional circumstances which may justify an upward adjustment in rare cases. … In addition to the contingent nature of a fee arrangement, delay in payment of a fee may justify an increase in a fee award."). "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." *Blum* at 905.

### 5.    The amount in question and the results obtained.

"[C]ourts generally will **not** look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977) (emphasis added). "[A]ttorney's fees awarded by district courts have 'frequently outrun the economic benefits ultimately obtained by successful litigants.'" *See Evans v. Jeff D.*, 475 U.S. 717, 735 (1986) (citation omitted). An attorney's fee award should not be reduced based on the amount of damages recovered. *City of Riverside,* 477 U.S. 561, 574 (1986). In *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967 (4th Cir. 1987), the Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorney's fees to be awarded in a Fair Credit Reporting Act case. In rejecting a claim that by the defendant urging proportionality, the Fourth Circuit stated:

> Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act. *Id.* at 974.

In *Yohay*, the Fourth Circuit cited the United States Supreme Court opinion in *Riverside v. Rivera*, supra. In *Riverside*, 106 S.Ct. at 2694, the Supreme Court stated:

> We reject the proposition that fee awards under (the Civil Rights Act) should be proportionate to the amount of damages a civil rights plaintiff actually recovers.

Following the Fourth Circuit's ruling that there is no requirement that there be proportionality between the amount of the consumer's recovery under Consumer Credit Protection Act statutes such as the Fair Credit Reporting Act and the amount of attorney's fees to be paid to the consumer's attorney for asserting rights under the Act, the Court has regularly applied the lodestar method to FDCPA actions in calculating fee awards, notwithstanding the sometimes smaller amount of the consumer's recovery. Compare, for example, the rulings on the merits in *Withers v. Eveland,* 998 F. Supp. 942 (E.D. Va. 1997) ($1,000.00 in statutory damages awarded at summary judgment), to the fee awards granted, *Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D. Va. 1998) (Full award of $5,605.00 requested in costs and attorney's fees); *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) ($750.00 awarded at summary judgment to each of two consumer plaintiffs in consolidated actions), *Creighton v. Emporia Credit Service, Inc.*, 1998 U.S. Dist. Lexis 6589 (E.D. Va., 1998) ($10,710.00 awarded as attorney's fees based on total request of $11,080.00); *Morgan v. Credit Adjustment Board*, 999 F. Supp. 803 (E.D.Va. 1998) ($300.00 awarded at summary judgment to each of two consumer plaintiffs in consolidated actions), *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 (E.D. Va. 1999) (Full award of $13,371.41 requested in costs and attorney's fees, including time spent litigating the fee petition[3]). With the natural increase that has occurred in market

---

[3] An Amended Order awarding $1,200.00 for the additional time spent preparing a reply brief to the Defendant's Opposition to Plaintiffs' Motion for Attorney's Fees is not reflected in the Lexis opinion.

rates, the range between the merits recoveries and the fee awards in each of these cases would of course be even greater today.

"In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside* 477 U.S. at 581 (footnote omitted); s*ee also Quaration v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999); and *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions are more important than relatively small damage awards. Indeed, when a provision for counsel fees is included in a regulatory act, it is recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney fees. The Supreme Court quoted Senator Tunney's remarks in the Congressional Record:

> If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire nation, not just the individual citizen, suffers.

*City of Riverside*, 477 U.S. at 575 (citation omitted).

The Third Circuit amplified this thought stating:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research,* 842 F.2d at 1449. "Congress has relied on such plaintiffs to act as private attorneys general." Id., at 1450 n.13; *see also Graziano* 950 F. 2d at 113.

In this matter, Defendant offered judgment to be taken against it for $1,000.00, plus Plaintiff's reasonable attorney's fees and costs through the date of the Offer of Judgment. This amount is the statutory maximum, and is an excellent result. It should be noted by this Court, that this result was only obtained through counsel's successful litigation of this matter and

ultimately negotiating this higher amount for Plaintiff.  Hence, Plaintiff's counsel should be entitled to their full fees and costs full the date of the Offer, September 25, 2012.

### 6.  **Awards in similar cases.**

Awards in similar cases have been addressed throughout this brief, but particularly in paragraphs II.C.3, *supra*.

### D.  **A "REASONABLE PAYING CLIENT" WOULD PAY THE ATTORNEY'S FEES REQUESTED BY PLAINTIFF'S COUNSEL IN THIS CASE.**

In light of the substantial time and resources expended by Plaintiff's counsel in this case, it is clear that Plaintiff benefited greatly from having skilled counsel with significant litigation experience and expertise in the area of consumer litigation prosecuting his claim. Because Plaintiff's counsel litigated this case on a contingency basis, without any guarantee of recovery, the attorney time expended on this case were hours that the firm's attorneys necessarily were unavailable to work on other, billable matters.

A reasonable paying client in Plaintiff's shoes, therefore, would certainly pay the fees requested by Plaintiff's counsel in this case (assuming the financial wherewithal to do so). *Cf. Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009) ("Current rates, rather than historical rates, should be applied in order to compensate for the delay in payment."). Moreover, based on the factors cited by the Second Circuit in *Arbor Hill* and other factors considered within the Second Circuit, the attorneys' fees requested by Plaintiff's counsel are reasonable and supported by the case law. Because the requested hourly rates are what a reasonable client would pay Kimmel & Silverman, P.C. when working on a billable hourly basis, the Court should grant the requested fee award in full.

### E.  **PLAINTIFF SET FORTH AMOUNTS BILLED WITH SPECIFICITY.**

To demonstrate its entitlement to fees, a party must submit "contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hour expended, and the dates on which the work was performed." *Morin v. Modern Cont'l Constr.*

*Co.*, No. 07 Civ. 4815, 2009 U.S. Dist. LEXIS 72525, at *8 (E.D.N.Y. July 1, 2009) (citing *Cruz v. Local Union NO. 3*, 34 F.3d at 1160-61). Courts have consistently acknowledged, however, that there is no requirement that the party seeking attorneys' fees present extensive documentation "record[ing] in great detail how each minute of his time was expended." *Putnam Leasing Co. v. Fields*, No. 05 Civ. 141, 2007 U.S. Dist. LEXIS 58794, at *12 (E.D.N.Y. June 27, 2007). Rather, the time records provided by the prevailing party need only provide sufficient detail to permit the court to accurately determine the reasonableness of the attorneys' fee application. *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548, 2008 U.S. Dist. LEXIS 82085, at *19-20 (S.D.N.Y. Oct. 17, 2008).

In the instant case, Plaintiff has furnished the Court with the detailed computerized time records contemporaneously recorded by the attorneys and paralegals who have provided legal services in connection with this litigation. *See* Exhibit "A".  Accordingly, Plaintiff has clearly satisfied the requirements for documenting the reasonable hours expended on this litigation. *See e.g., Auscape v. Nat'l Geographic Soc'y,* No. 02 Civ. 6441, 2003 U.S. Dist. LEXIS 13846, at *11 (S.D.N.Y. Aug. 8, 2003) ("[Plaintiff] has submitted a printout from what appears to be its counsels' billing software which contains all the required information. Such a submission clearly meets the evidentiary threshold for the recovery of attorneys' fees."); and *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstruction of the contemporaneous records . . . suffice to permit recovery of attorneys' fees").

## F.  PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Rule 54 states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." *See* Fed. R. Civ. P. 54(d)(1). Taxation of costs is governed by 28 U.S.C. § 1920, which explicitly grants "[a] judge or clerk of any court of the United States" discretion to tax costs against the

losing party in any federal litigation. *See* 28 U.S.C. § 1920. The statute enumerates six categories of expenses which may be taxed as costs: 1) fees of the court clerk and marshal; 2) fees for transcripts "necessarily obtained for use in the case;" 3) printing fees and witness fees; 4) copying fees "where the copies are necessarily obtained for use in the case;" 5) certain docket fees as enumerated in § 1923; and 6) fees of court-appointed experts and interpreters. *Id.*; *see also Natural Organics, Inc. v. Nutraceutical Corp.,* 01 Civ. 0384 GBD RLE, 2009 WL 2424188 (S.D.N.Y. Aug. 6, 2009). Here Plaintiff seeks costs pursuant to Defendant's Offer of Judgment and Rule 54. *See* Docket Entry 18-1. Plaintiff seeks the filing fee of $350.00 in this matter and a $75.00 pro hac vice fee, both fees charged by the court clerk, totaling $425.00. *See* Exhibit "A".

## III.   <u>CONCLUSION</u>

Plaintiff respectfully requests this Court award his attorneys' fees in the amount of $5,470.50 and costs in the amount of $425.00 for a total of $5,895.50.


Respectfully submitted,
Kimmel & Silverman, P.C.

By: /s/ Craig Thor Kimmel
    Craig Thor Kimmel
    1001 6th Avenue, Suite 12
    New York, NY 10018
    Phone: (800) 668-3247
    Email: kimmel@creditlaw.com

Dated: October 17, 2012        Attorney for Plaintiff, Orland Payne