UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ORLAND PAYNE,

                        Plaintiff,        12-CV-6136T

        v.                        **DECISION**
                                                     **and ORDER**
ALLIED INTERSTATE, INC.,

                        Defendant.
_____

## INTRODUCTION

Plaintiff, Orland Payne ("Payne" or "Mr. Payne") brought the instant action pursuant to the Fair Debt Collection Practices Act, ("the Act" or "FDCPA") codified at 15 U.S.C. § 1692 et seq. contending that the defendant Allied Interstate, Inc., ("Allied") violated several provisions of the FDCPA by improperly attempting to collect a debt that he did not owe. Approximately six months after the Complaint was filed, and prior to any substantive motions being filed or discovery taking place, plaintiff accepted an Offer of Judgment made by the defendant in the amount of $1,000.00. Thereafter, counsel for the plaintiff filed a motion for fees and costs seeking $5,895.50 in compensation for prosecuting this action on behalf of the plaintiff.

Defendant opposes the plaintiff's motion for fees on grounds that the amount sought by the plaintiff is grossly excessive and not justified by the amount of work performed by counsel, or the result obtained for the plaintiff. Specifically, the defendant contends that the hourly rates of compensation proposed by the plaintiff are excessive in light of hourly rates approved by courts

in similar actions, and that the amount of time allegedly spent by plaintiff's counsel prosecuting this action is inflated.

For the reasons set forth below, I grant in-part and deny in-part plaintiff's motion for attorney's fees and costs, and award plaintiff a total of $1,880.00 in fees and costs.

BACKGROUND

Plaintiff Orland Payne is a resident of Farmington, New York. According to the Complaint filed in this action, defendant Allied, a debt collector, attempted to collect a debt from Payne related to a credit card. Plaintiff contends that he did not owe any debt with respect to the credit card, and that Allied used illegal tactics in attempting to collect the non-existent debt from him including making harassing phone calls, and threatening to sue him. Less than two months after the Complaint was filed, the defendant appeared in this action, and thereafter, slightly more than four months after defendant appeared, it made an offer of judgment to the plaintiff in the amount of $1,000.00, which the plaintiff accepted. During the pendency of the action prior to plaintiff's acceptance of the offer of judgment, no substantive motions were filed, and no discovery took place.

Following plaintiff's acceptance of the Offer of Judgment, the parties were unable to agree on the amount of attorneys' fees that would fairly and adequately compensate plaintiff's counsel, and plaintiff's counsel has now moved for an award of attorneys' fees in the amount of $5,895.50.

DISCUSSION

A.  Standard for determining Attorneys' Fees

The Fair Debt Collection Practices Act provides that a prevailing party alleging a violation of the Act may recover reasonable attorneys' fees and costs. See 15 U.S.C. § 1692k(a)(3); Ryan v. Allied Interstate, Inc., 882 F.Supp.2d 628, 630 (S.D.N.Y., 2012). An appropriate starting place for a court in making an award of reasonable attorneys' fees is the consideration of the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This calculation, which provides the court with an objective basis "to make an initial estimate of the value of the lawyer's services," is commonly referred to as the "lodestar." Id.; City of Riverside v. Rivera, 477 U.S. 561, 568 (1986). Although the lodestar is useful to make an initial calculation of the fair and reasonable value of an attorney's services, it is not the sole factor in determining the appropriate amount of an attorneys' fee award. Once the court has determined the lodestar, it must evaluate that figure in light of other circumstances present in the case. See Hensley, supra. One of the most critical factors to be evaluated is the extent of success achieved. Hensley, 461 U.S. at 436.

In making an application for fees, the attorney seeking an award of fees is required to substantiate his request by submitting documentation supporting the hours expended on the litigation and

the hourly rate requested. Hours that are not "reasonably expended" must be excluded from consideration. Moreover, the court must adjust the attorney's proposed lodestar if the court determines that the requested hourly fee is not reasonable. See Blum v. Stentson, 465 U.S. 886 (1984). In making this determination, the court must consider the "prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id.

After a careful review of the application submitted by plaintiff's counsel, and consideration of the defendant's opposition to the plaintiff's fee application, I make the following findings and conclusions with respect to the appropriate compensation that may be recovered by plaintiff's counsel.

B.   Calculation of Compensable Fees and Costs

1.   Time Expended in the Prosecution of Plaintiff's Case

In support of its application for fees, plaintiff's counsel submits its billing records identifying all time spent in prosecuting this action on behalf of the plaintiff. According to the billing records, plaintiff's law firm, Kimmel and Silverman, P.C., ("Kimmel and Sullivan" or "the firm") spent a total 38.3 hours working on Payne's case. Of the 38.3 hours billed, plaintiff's counsel "wrote off" 6.1 hours, and as a result, Kimmel and Sullivan seek fees based on 32.2 hours of work performed by various attorneys and paralegals employed by the law firm.

Before analyzing the time billed by individual attorneys and paralegals employed by the firm, the court notes that Kimmel and Silverman is a law firm located in Ambler, Pennsylvania, (a borough located approximately 20 miles north of Philadelphia, Pennsylvania) that specializes in Fair Debt Collection actions and lemon law claims.  The firm advertises its services on the internet, where it maintains the website "www.creditlaw.com," which allows individuals to submit information to obtain a free case review regarding potential violations of the FDCPA, and invites individuals from all states to call its toll-free number "1-800-NOT FAIR" for a free consultation.  According to the plaintiff's fee application, the attorneys who worked on this matter, Craig Thor Kimmel, Amy L. Bennecoff, Tara L. Patterson Christopher J. Kelleher and Jacob U. Ginsburg, have each handled "countless FDCPA cases...."  Memorandum in Support of Plaintiff's Application for fees at p.  11.

According to the fee application, attorney Craig Thor Kimmel, one of the two partners of the Kimmel and Sullivan firm, spent 10.7 hours working on this matter.  Much of the time billed by attorney Kimmel was for reading or writing emails and electronically generated court notices.  For example, On March 16, 2012, attorney Kimmel charged $85.00 (discounted to $45.00) to read two emails generated by the court's automated filing system indicating that the case had been filed, and that the case was assigned to this Court.  On March 19, 2012, attorney Kimmel charged another $42.50 (again discounted to $22.50) to read an automatically generated notice from the court noting that a summons was issued.  On April 3, attorney Kimmel again

charged $42.50 (discounted to $22.50) for reading a notice indicating that a waiver of service had been executed. From January 10 to February 22, 2012, attorney Kimmel charged $467.50 (discounted to 247.50) for writing and reading emails to and from internal associate attorneys within the firm, and writing to and reading an email from the defendant. On three separate occasions, all on May 8, 2012, attorney Kimmel reviewed three court generated notices, two regarding notices of appearance of opposing counsel, and one regarding a corporate disclosure statement at a cost of $127.50 (discounted to $67.50). Attorney Kimmel then charged an additional $42.50 (discounted to $22.50) to actually read the corporate disclosure statement referenced in the automatically generated email[1]. On May 18, 2012 attorney Kimmel again charged $42.50 (discounted to $22.50) to read an electronically generated notice indicating that the defendants had filed an Answer. Additionally, he charged $85.00, (discounted to $45.00), to read the answer. On May 21 and 22, 2012, Kimmel billed $127.50 (discounted to $67.50) to read two electronically generated notices (one of which noted that Magistrate Judge Feldman had been assigned to the case) and a Scheduling Order issued by Judge Feldman. On May 24, 2012, attorney Kimmel charged $85.00 (discounted to $45.00) for an email exchange with his associate attorney Amy Bennecoff regarding a court conference. Attorney Bennecoff also charged $90.00 (discounted to $60.00) for her

---

[1] The corporate disclosure statement filed by defendant Allied was likely familiar to attorney Kimmel, as Kimmel and Sullivan have filed numerous actions against Allied, and indeed explicitly solicit persons who have been contacted by Allied.

participation in the email exchange with attorney Kimmel, and for additional emails she prepared regarding the conference.

These are but examples of the myriad billing entries attorney Kimmel has logged for reading emails and automatically generated notices issued by the court anytime a filing event occurs, even for documents filed by the Kimmel and Sullivan firm. Indeed, the billing records for attorney Kimmel are littered with such charges: and because attorney Kimmel claims a billing rate of $425.00 per hour (discounted to $225.00)[2], and bills in tenths of an hour increments, any work done by attorney Kimmel, whether it be legal work or reading a computer-generated notice, generates a minimum charge of $42.50, (discounted to $22.50).

According to the plaintiff's fee application, a total of five attorneys from the Kimmel and Sullivan firm worked on this matter, which, it bears repeating, settled for $1,000.00 prior to any discovery taking place, and prior to any substantive motion being filed by any party. In addition to attorney Kimmel's 10.7 hours of work, attorney Amy Bennecoff, a senior associate, billed 9.3 hours of time working on Mr. Payne's case. Attorney Bennecoff did not begin working on this matter until May 24, 2012, approximately two months after the Complaint was filed. Between May 24 and September 25, 2012, attorney Bennecoff made 37 entries documenting time she spent prosecuting this matter. Of the 37 billing entries, 25 involved emailing other firm members or opposing counsel. For example, on May

---

[2] The appropriateness of the hourly rates sought by members and employees of the Kimmel and Sullivan firm is discussed in Section B(2) below.

24, 2012, attorney Bennecoff charged $90.00 (discounted to $60.00) for emailing attorney Kimmel (and reading an email from him) regarding a conference scheduled for the following month, and emailing a paralegal regarding having yet another attorney from the firm attending the conference if the firm would not be allowed to appear telephonically.[3] On May 30, 2012, attorney Bennecoff charged $30.00 (discounted to $20.00) to read an email from attorney Kimmel regarding the conference.[4] A review of the billing records provided by attorney Bennecoff reveal that the firm often charged for attorney time when one attorney sent an email, and another attorney in the firm read the email. For example, on June 4, 2012, attorney Bennecoff charged $60.00 (discounted to $40.00) for an email "exchange" with attorney Kimmel regarding preparation of a "Rule 26 Report." Attorney Kimmel similarly billed $85.00 (discounted to $45.00) for engaging in that email exchange with attorney Bennecoff.

---

[3] The paralegal who received the email from attorney Bennecoff duly charged $8.00 (discounted to $5.00), for reading attorney Bennecoff's email.

[4] Attorney Kimmel telephonically attended the June 20, 2012 conference held before Magistrate Judge Jonathan W. Feldman. According to attorney Kimmel's billing records, the conference took between 6 and 12 minutes. Billing records further indicate that: (1) attorney Kimmel spent twice the amount of time he spent at the conference discussing the logistics of the conference with his staff; (2) attorney Bennecoff, who did not appear at the conference, charged the same amount of time as attorney Kimmel discussing conference logistics with attorneys and staff of the Kimmel and Sullivan Firm; and (3) two paralegals charged a total of .3 hours discussing the logistics of appearing at the conference telephonically. In all, the firm charged $329.50 (approximately 1/3 of the plaintiff's recovery in this case, (but discounted to $193.00, approximately 1/4 of the plaintiff's recovery)), discussing who would appear at a court conference, and how that attorney would appear, for a conference that ultimately lasted less than 13 minutes.

Of the 12 billing entries logged by attorney Bennecoff that were not related to emailing, 2 involved discussions with the court and opposing counsel regarding appearing at a mediation by telephone, and 2 involved discussions regarding the offer of judgment made by the defendant. Attorney Bennecoff made only one charge in the file for conducting legal research. That research involved the amount of fees her firm would be entitled to for prevailing in an FDCPA case in the Western District of New York. This one-half hour of research was conducted one day prior to the offer of judgment being accepted by the plaintiff.

Attorney Jacob Ginsburg billed 2.2 hours of time on behalf of the plaintiff in this matter. This work occurred on two separate days, February 22, 2012, and March 13, 2012. On February 22, 2012, attorney Ginsburg read an email from attorney Kimmel, charging $22.50 (discounted to $18.00). As stated above, Kimmel, of course, charged the client to send this email, resulting in a total billing for this email exchange of $65.00 (discounted to $40.50). On March 13, Ginsburg charged an additional $45.00 to read an email from attorney Kimmel, and respond to the email.

Attorney Tara Patterson spent .4 hours working on this matter. A quarter of that time was spent emailing a paralegal regarding discovery documents to be sent out. One half of her time was spent reviewing interrogatories and requests for production of documents drafted by a paralegal.

Finally, attorney Christopher J. Kelleher billed .3 hours of time in this matter, all either reading or sending emails. On August

15, 2012, he engaged in an email exchange with attorney Bennecoff regarding mediation of this matter, for which he billed $51.00, (reduced to $40.00). Nine days latter, he read another email from attorney Bennecoff regarding mediation, charging $25.50 (reduced to $20.00) to do so. In line with the firm's practice, attorney Bennecoff also billed her time spent reading and writing emails to attorney Kelleher.

Despite having only 18 minutes, at most, of involvement in the plaintiff's case, all of that time spent reading or writing emails regarding mediation, on September 24, 2012, three days after receiving defendant's initial offer of judgment, and two days before accepting a second offer of judgment, Kimmel and Sullivan moved to have attorney Kelleher admitted to the Western District of New York pro hac vice, and paid the $75.00 pro hac vice fee. Despite being admitted to the Western District of New York, attorney Kelleher never appeared before the court, and indeed, once the offer of judgment was made, never participated in any manner in the further prosecution of this case.

The remainder of time billed in this matter was time spent by non-lawyers, who contributed 9.3 hours of work in this case. Just as with the attorneys at the Kimmel and Sullivan firm, paralegals billed their client to write to and read emails from other employees or partners of the firm. For example, on May 24, 2012, paralegal Pete Keltz charged $8.00 (reduced to $5.00) to read an email from Attorney Bennecoff. On June 5, and June 19, 2012, Keltz billed time for engaging in email correspondence with attorneys Bennecoff and Kimmel

respectively. On August 15, 2012, Keltz again charged $8.00 (reduced to $5.00) to read an email from Attorney Bennecoff, and there are several more charges billed by Keltz for reading or writing emails to employees or members of the firm.

It appears from the billing records that paralegals at the Kimmel and Sullivan firm had much more direct contact with the plaintiff than any attorney or all attorneys combined. There are at least 14 entries for billable time from paralegals charging time for discussing the case with the Mr. Payne over the phone. The firm's attorneys, and most often attorney Kimmel, were in contact with the plaintiff on only 9 or fewer occasions.

In sum, attorney Kimmel seeks payment for 10.7 hours of work; attorney Amy Bennecoff seeks payment for 9.3 hours of work; attorney Jacob Ginsburg seeks payment for 2.2 hours; attorney Tara Patterson seeks payment for .4 hours; and attorney Christopher J. Kelleher seeks payment for .3 hours. The firm seeks additional compensation for 9.3 hours of paralegal and law clerk time.

2. Adjustments to Time Billed by Kimmel and Sullivan

As stated above, much of the billing by the attorneys in this matter was for reading and writing emails to one another, and in the case of attorney Kimmel, for reading electronically generated notices from the court regarding filing events that took place. I find that the charges for reading electronically generated messages, and emailing about administrative or clerical issues, are administrative, and may not be charged. But I am not the first Judge to make such a finding, as the Kimmel and Sullivan firm has a long history of

overreaching in its fee applications, and has been admonished by several courts for attempting to bill for tasks that are not compensable as attorneys' fees. As stated recently by United States Magistrate Judge Debra Freeman, who reviewed several fee applications from Kimmel and Sullivan in Barile v. Allied Interstate, Inc., 2013 WL 795649 at * 7 (S.D.N.Y., January 30, 2013):

> The [Kimmel and Sullivan] Firm has submitted extremely detailed time records, but that very detail often hides exaggeration and excess. For example, in each of the[] cases [before the court], Kimmel Firm attorneys and staff have billed multiple entries of "0.1 hour"—often several on one day—for very brief, mundane tasks such as emailing a document, e-filing, or receiving a notice of appearance or other notification from the Court's automated Electronic Case Filing ("ECF") system. This excessive specificity appears designed to inflate the total number of hours billed, by attributing a separate 6 minutes to each brief task. Further, when each of the attorneys or staff who are parties to an exchange of extremely brief emails engage in this practice, the result is 12 minutes or more billed for communications that likely took one or two minutes, if not less.

In Barile, the court dramatically cut the fees and costs requested by the Kimmel and Sulivan firm, and several courts considering fee applications from the firm have done the same. See e.g. Andert v. Allied Interstate, LLC., 2013 WL 3833077 at *3-4 (S.D.N.Y., July 17, 2013)(noting that the Kimmel and Sullivan firm has been admonished by courts across the country for its improper billing practices, and disallowing charges for reading electronically generated notices); Jablonski v. Portfolio Recovery Associates, 2012 WL 1552462, at * 5 (N.D. Ohio, April 30, 2012)(noting that "although it may be admirable

practice for attorneys to review each and every e-mail from the Electronic Court Filing system, reviewing confirmation e-mails of material the attorney previously filed is neither sufficiently complex nor the traditional work of attorneys to justify compensation under a fee-shifting statute."); Ryan v. Allied Interstate, Inc., 882 F.Supp.2d 628, 637 (S.D.N.Y. 2012)(admonishing the Kimmel and Sullivan firm practice of having the highest-paid partner bill for reading electronically generated notices in tenth-of-an-hour increments, and excluding all time for reading electronic notices.); Zavodnick v. Gordon & Weisberg, P.C., 2012 WL 2036493 (E.D. PA., June 6, 2012)(holding that based on "questionable arguments and evidence Kimmel and Silverman has offered in support of its Fee Petition, it is difficult to accept that the firm has advanced either in good faith.")

Courts have similarly admonished the Kimmel and Sullivan firm for attempting to charge for internally emailing other attorneys or employees of the firm regarding administrative or clerical matters. Andert, 2013 WL 3833077 at *3 (adjusting downward unnecessarily duplicative time emailing); Jablonski, 2012 WL 1552462, at *4 (declining to allow fees for clerical work involving emailing or reading emails from court, client, and other firm members or employees); Conklin v. Pressler & Pressler LLP., 2012 WL 569384 at *7 (reducing hours claimed by attorneys for, inter alia, email exchanges between Kimmel and Sullivan attorneys); Ryan, 882 F.Supp.2d at 637 (S.D.N.Y. 2012)("The Court also reduces Kimmel's hours for excessive internal emails, especially those lacking detail . . . .").

Based on my finding that much of the work performed by the attorneys working on this file was unnecessary, redundant, administrative, or clerical, and that a portion of the work conducted by paralegals was redundant, I find that a reduction in the number of hours billed by the Kimmel and Sullivan firm is appropriate. Rather than engage in a line-by-line adjustment of every billing entry made by the firm, however, I find that a wholesale reduction of 70% of time billed by attorneys of the Kimmel and Sullivan firm is appropriate, as is a reduction of 30% of time billed by paralegals of the Kimmel and Sullivan firm. See In re Agent Orange Product Liability Litigation, 818 F.2d 226, 237-238 (2d Cir. 1987)(district courts have authority to make "across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'"); O'Toole v. Allied Interstate, LLC., 2012 WL 6197086 (S.D.N.Y., Dec. 12, 2012)("As a concession to the mortality of judges, the law does not require a line-item review of fee applications). Accordingly, I find that attorney Kimmel is entitled to reimbursement for 3.2 hours of work; attorney Amy Bennecoff is entitled to reimbursement for 2.8 hours of work; attorney Jacob Ginsburg is entitled to reimbursement for .65 hours; and attorneys Tara Patterson and Christopher J. Kelleher are each entitled to reimbursement for .1 hours of work. For paralegal and law clerk work, the Kimmel and Sullivan firm is entitled to reimbursement for 6.5 hours of time.

### 3. The Hourly Rates sought by the Kimmel and Sullivan Firm are excessive

Generally, the reasonable hourly rate that a court will award an attorney pursuant to a fee application is the hourly rate employed by attorneys in the District in which the litigation is brought. Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2009). In the instant case, attorney Kimmel, a named partner of the Kimmel and Sullivan law firm, seeks compensation at an hourly rate of $225.00. Attorneys Bennecoff, Kelleher, and Patterson, senior associates with the firm, seek hourly fees of $200.00. Attorney Ginsburg, a junior associate who graduated from law school in 2011, seeks an hourly rate of $180.00 per hour.

Three non-attorneys, Jason Ryan, Pete Keltz, and Caroline Diehl also worked on this matter on behalf of the plaintiff. Mr. Ryan, a paralegal, seeks reimbursement at a rate of $80.00 per hour. Mr. Keltz, who is also a paralegal, seeks reimbursement in the amount of $50.00 per hour. Ms. Diehl, a law clerk, seeks reimbursement in the amount of $100.00 per hour.

The rates sought by plaintiff's counsel are higher than those generally employed by practitioners in this District. Recently, this court held that fees of $180.00 per hour were appropriate for a litigator in FDCPA cases. Bonafede v. Advanced Credit Solutions, LLC, 2012 WL 400789 at *5 (W.D.N.Y., February 07, 2012). Even more recently, in Muise v. Allied Interstate, Inc., 2012 WL 4044699 (S.D.N.Y., September 12, 2012), Judge Griesa, of the District Court for the Southern District of New York had occasion to consider the

appropriate billing rates in an FDCPA case for three of the attorneys present before this court: attorneys Kimmel, Bennecoff and Ginsburg. Judge Griesa also considered the appropriate rates for paralegals Ryan and Keltz, who are also before the court in this fee application. Judge Griesa found that in the Southern District of New York (a district comprising the counties of New York, Bronx, Westchester, Rockland, Putnam, Orange, Dutchess, and Sullivan) attorney Kimmel was entitled to an hourly fee of $200.00; attorney Bennecoff was entitled to compensation at $150.00 per hour; attorney Ginsburg was entitled to an hourly rate of $100.00 per hour, and paralegals Keltz and Ryan were entitled to reimbursement at a rate of $50.00 per hour. Although generally billing rates are much higher in the Southern District of New York than in the Western District of New York, I adopt Judge Griesa's fee structure for attorneys Kimmel, Bennecoff and Ginsburg, and for paralegals Ryan and Keltz. I further hold that attorneys Kelleher and Patterson are entitled to fees of $150.00 per hour, and that law clerk Diehl shall be compensated at a rate of $75.00 per hour. These rates are consistent with rates employed by attorneys and paralegals in the Western District of New York.

Accordingly, I find the following fees to be appropriate:

| | | |
|---|---|---|
| Attorney Kimmel: | $640.00 | (3.2 hours x $200.00 per hour) |
| Attorney Bennecoff: | $420.00 | (2.8 hours x $150.00 per hour) |
| Attorney Ginsburg: | $65.00 | (.65 hours x $100.00 per hour) |
| Attorney Patterson | $15.00 | (.1 hours x $150.00 per hour) |
| Attorney Kelleher: | $15.00 | (.1 hours x $150.00 per hour) |
| Law Clerk Diehl | $150.00 | (2.00 hours x $75.00 per hour) |
| Paralegals Ryan and Keltz: | $225.00 | (4.5 hours x $50.00 per hour) |

4. Costs

In addition to the fees sought by the Kimmel and Sullivan firm, the firm seeks costs of $425.00. The firm seeks $350.00 in costs for filing the Complaint, and $75.00 for having attorney Kelleher admitted pro hac vice to the Western District of New York. While I grant plaintiff's request for reimbursement of fees for filing the Complaint, I disallow reimbursement for fees associated with the firms pro hac vice motion. As stated above, at the time Kimmel and Sullivan moved to have attorney Kelleher admitted to the Western District of New York, he had spent no more than 18 minutes on the file, all of that time spent reading or writing emails regarding mediation. Moreover, the motion to have him admitted was made three days after receiving defendant's initial offer of judgment, and two days before accepting a second offer of judgment. I find that the fee for admitting attorney Kelleher to the Western District of New York is an unnecessary expense that need not be reimbursed by the defendant. See Goser v. Allied Interstate, LLC, 2013 WL 2181760 at *2 (denying costs associated with pro hac vice fee sought by Kimmel and Sullivan where the attorney had not done any work on the case, and the motion to admit pro hac vice was made on the same day an offer of judgment was accepted). At the time the pro hac vice motion was made, plaintiff was ably represented by attorney Kimmel, and there was simply no need for plaintiff to be represented in the Western District by two attorneys from the same Pennsylvania law firm.

CONCLUSION

For the reasons set forth above, I find that plaintiff's application for fees and cost is excessive and unjustified. Plaintiff is awarded $1,530.00 in fees, and $350.00 in costs, for a total of $1,880.00 in fees and costs.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

---
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         October 9, 2013